OCTOBER AND NOVEMBER TERM, 1882, No. 93.    OCTOBER 12, 1882.

## Appeal of John Huckestein *et al.*

1. Where an application to open a judgment rests upon an attempt to show that the terms of a written contract were not complied with, the weight of the evidence touching the disputed points need not be so strong in order to move the Court to open the judgment as if the contract was sought to be overthrown.

2. That a party has a judgment as collateral security for what may be due upon a contract, is not a reason for refusing to open the judgment where there is a proper case for submission to a jury to determine how much, if anything, is due on that contract.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Appeal by John Huckestein and Henry Huckestein, copartners, as Huckestein & Co., George S. South, and William Huckestein, from the decree of the Court of Common Pleas No. 1 of *Allegheny County*, discharging a rule to show cause why the liquidation of a judgment should not be set aside, and why the judgment should not be opened and the defendants let into a defense.

Judgment was entered against the defendants November 16, 1881, in favor of A. J. Jolly, for $1,052 52, upon a confession contained in a bond. The bond was in the penal sum of $4,000, and conditioned for the payment of $2,000 on the 1st day of November, 1881, and "if fifty per cent. thereon is paid on its becoming due, then, and in that case, this bond not to be entered on record until ten days after the date of its becoming due, viz: November 1, 1881; the amount of money to be collected on this bond to be liquidated in accordance with the amount of stone delivered to said Huckestein & Co., for the pier in the Union Bridge Company's bridge, for which A. J. Jolly shall produce certificates for the price of the stone from Huckestein & Co." The bond was given to secure performance of an agreement between Jolly and Huckestein & Co., dated July 27, 1881, in which Jolly agreed to deliver all the new sandstone, estimated at three hundred cubic yards, required for the construction of a new pier for the Union Bridge over the Allegheny river. The agreement provided that the stone were to be delivered "at the rate of two car-loads per day, or as fast at that rate as the railroad company will transport them;" that they were to be measured by Jolly and marked single on each stone, and the invoice of each car-load to be mailed

to Huckestein & Co., and if the invoice was not accepted, Jolly to be notified within five days; that the whole price of the stone delivered was to be paid Jolly on or before November 1, 1881, Huckestein & Co., to pay the freight and charge it to Jolly; that the stone were to be cut and dressed, in accordance with specifications to be furnished by Huckestein & Co., "all plans and specifications to be furnished within two weeks from the date hereof," and "all the said stone to be delivered before the 20th day of September, 1881."

The liquidation of the judgment, filed by leave of the Court, *nunc pro tunc*, May 1, 1882, as of November 15, 1881, showed a credit upon the bond of $1,000, paid November 1, 1881. The judgment was made up by adding to the balance of $1,000 the sum of $2 50 for interest and $50 12 for attorneys' commissions. This liquidation set forth a further claim for stone, furnished under the contract, amounting, November 11, 1881, over and above payments on account, to $98 07, and for stone furnished subsequently, $281 70.

December 17, 1882, upon petition of the defendants, the Court granted a rule to show cause why the liquidation should not be set aside and the judgment opened and they be let into a defense. Before a commissioner appointed to take testimony upon the rule, *John Huckestein*, one of the defendants, testified, *inter alia*, in substance:

I gave Jolly verbally the sizes needed, from time to time, to meet the heights of the ice-cutter. I also sent to acquaint him with the height required. I gave instructions to inform him of the sizes required. I told him in the beginning of the delivery of the stone that McSweeny had condemned the manner in which the stone were cut and ordered us to re-cut them. I told him also, at this time, that he should send us the stones as needed then in the building of the pier, as there was some stone among those deliveries that we needed in the last couple of courses of stone in the pier. The stone were not delivered as ordered by me. They came mixed in sizes, and not as we ordered them, nor as we needed them in the building of the pier. The stone were not cut as ordered, and were not of the kind called for by the specifications. The joints did not come up to the requirements, and the balance of the stone was narrower and thinner. I told Jolly of the trouble it put us to in setting the stone, that it took more cement; on several occasions the engineer ordered the stone to be taken out. The stone were not

[Appeal of John Huckestein *et al.*]

shipped as we needed them. We were waiting on them. We waited for three days before we had enough stone to begin the third course. We waited about on every course after that. They did not ship the stone required in the first courses first. They shipped them mixed as to their heights. It delayed us from six to seven weeks. We were working on the first course September 10. We were to finish the pier by October 1, 1881. We finished it on the 20th or 21st of December. There were twenty-three courses. If the stone had been on the ground as ordered, it would have taken thirty-five days to build the pier. The stone were not delivered within the time specified in the contract. The last of the coping stone were delivered on the 7th or 9th of December. We unloaded promptly. The river rose on the 18th, 19th, and 20th of November. The stones that were unfit to° go in the pier we put in a culvert. Our actual loss, incurred by reason of the non-delivery of the stone as called for in the agreement, was $3,339 12.

There were numerous witnesses for the defendant who corroborated much of the above testimony.

*A. J. Jolly*, the plaintiff, testified, *inter alia :* "On the 15th of October, I received the first specifications for the stone required. We would receive an order for a certain class of stone—generally a verbal order; here and there a telegram; received some by letter. These orders were, at various times, countermanded before they would reach their destination."

In rebuttal, he testified that he did not delay the shipment of the stone after receiving instructions from Huckestein & Co., at any time during the erection of the pier.

A number of witnesses for the plaintiff testified that Huckestein & Co. did not haul the stone away promptly from the cars when delivered.

May 1, 1882, the Court discharged the rule.

The defendants then appealed, assigning that the Court erred in refusing to open the judgment, in discharging the rule, and in refusing to set aside the liquidation.

*Barton & Son*, for the appellants.

All of the evidence shows that, from time to time, plaintiff's attention was called to the sizes and courses, and that he was dilatory in delivering.

The opening of a judgment entered on a warrant of attorney is no longer within the discretion of the Court below, but, like entering a judgment for want of a sufficient affidavit of defense, is a matter that may be re-

viewed. The question is not, did the defendants show conclusively a good defense, but did they make out a fair case for a jury.

*John R. Large*, for the appellee.

The testimony does not show who was to blame in the matter. In no special instance is the cause of the delay brought to rest upon the appellee.

October 25, 1882, the opinion of the Court was delivered by TRUNKEY, J.

Jolly covenanted with Huckestein & Co. that he would deliver all the new sandstone required for the construction of a new pier for the Union Bridge before September 20, 1881. Huckestein & Co. gave a judgment-bond, with surety, to secure payment of the price, and the judgment was confessed on said bond. The contract and bond are unimpeached, neither party alleging fraud or mistake therein. This application for opening the judgment does not rest upon an attempt to overcome or vary a written contract by oral testimony.

The appellants do not undertake that burden, and the weight of the evidence touching the disputed points need not be so strong in their favor to move the Court to open the judgment, as if the contract in writing was sought to be overthrown. That the party has a judgment as collateral security for what may be due upon a contract is not reason for refusing to open the judgment, when there is a proper case for submission to a jury to determine how much, if anything, is due on that contract.

Here the allegations and testimony have respect to the manner of performance, and delay in performance, by the plaintiff in the judgment, of his contract. That there was considerable delay is agreed; and that by reason thereof Huckestein & Co. suffered loss is clearly proved.

It also appears that Huckestein & Co. failed to give the orders and specifications, so that the stone could have been delivered within the stipulated time. But, after the delivery had begun, the stone was not promptly furnished as required for the work. The parties differ as to the cause, each alleging it was the other's fault. One also alleges that part of the stone furnished was unfit, and could not be used in the pier; the other, that the whole accorded with the specifications.

Numerous witnesses testified respecting the disputed points, and their testimony is conflicting. An examination of the testimony convinces us that the appellants are

entitled to a trial by jury. It would answer no good end to now remark the testimony at length or express an opinion of its weight.

The order discharging the rule to show cause is reversed, and said rule is made absolute, and *procedendo* awarded.

OCTOBER AND NOVEMBER TERM, 1883, No. 54. OCTOBER 25, 1883.